UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONNELL ROBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:13-CV-1336 RM |
| v. | ) |
| | ) |
| DR. JACKSON and DR. LIAW, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Donnell Robertson, a *pro se* prisoner, is proceeding against Dr. Jackson and Dr. Liaw for compensatory and punitive damages for denying him medical treatment for his ears and back while he was housed at the Westville Correctional Facility. He was also proceeding on a claim for injunctive relief for the same conditions, but his transfer to the Miami Correctional Facility last year made his injunctive relief claim moot. *See* Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) ("Pearson was transferred from Tamms, thus mooting, at the very least, his request for injunctive relief.") and Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

The defendants seek summary judgment because Mr. Robertson can't demonstrate that they were deliberately indifferent. Mr. Robertson argues that the defendants were deliberately indifferent to his serious medical needs and that they shouldn't have accessed his medical records as a part of this lawsuit.

## I. Legal Standards

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion can't just rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party doesn't establish the existence of an essential element on which that party bears the burden of proof at trial, summary judgment is proper. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006).

## II. Facts

Mr. Robertson objects to the defendants' submission of his medical records. He filed a motion asking the court to dismiss the summary judgment motion because his records

2

were obtained in violation of Indiana Department of Correction policies and without his consent. "[T]he exclusionary rule is not a proper remedy for a violation of agency regulations," Buntrock v. S.E.C., 347 F.3d 995, 999 (7th Cir. 2003), and while federal law provides for the privacy of medical records, "HIPAA does not provide any private right of action, much less a suppression remedy." United States v. Streich, 560 F.3d 926, 935 (9th Cir. 2009). Mr. Robertson's medical records are admissible and the motion asking to dismiss the summary judgment motion will be denied.

Mr. Robertson doesn't dispute the accuracy of his medical records (DE 27-2) or any of the declarations made by either Dr. Liaw (DE 27-1) or Dr. Jackson (DE 27-3). For summary judgment purposes, then, the court accepts them in their entirety as undisputed facts. Dr. Jackson declared that "although I do not recall specifically examining the patient, I may have responded to calls from nursing staff regarding his frequent Urgent Care visits." DE 27-3 at 2. The medical records contain nothing to indicate that Mr. Robertson was ever a patient of Dr. Jackson. Neither is there any record of Dr. Jackson having consulted with a nurse about his medical condition or having made any treatment decisions related to him.

Though the court has accepted as undisputed facts all of the medical records submitted with the summary judgment motion (DE 27-2), This opinion only sets forth those medical facts that are relevant to this decision. These include any treatment provided by Dr. Liaw as well as treatment provided by others that relate to events where Mr. Robertson alleges that Dr. Liaw was deliberately indifferent even if there was no indication that Dr.

Liaw was involved in the event. The facts related to treatments provided by Dr. Liaw are in separate paragraphs from those related to treatments by others.

## A. 2012

We begin with the medical events of 2012. On March 5, Dr. Liaw examined Mr. Robertson and noted that he had a follow-up appointment with an outside specialist for his chronic ear infections. DE 27-2 at 1. His report doesn't indicate that Mr. Robertson had any back pain. DE 27-2 at 2. During that visit, Dr. Liaw reviewed his prescribed medications that included boric acid powder for both ears once a day and two 325 mg Tylenol[1] twice a day for pain. DE 27-2 at 2-3.

Dr. Anekal B. Sreeram, an otolaryngologist, saw Mr. Robertson on March 23, and suggested Debrox[2] drops twice a day. 27-2 at 6. That day, Mr. Robertson began receiving Debrox drops twice a day for his ears. DE 27-2 at 10. Dr. Sreeram saw him again on April 6, and suggested antibiotic ear drops and Vicodin[3] for severe pain. DE 27-2 at 7-8. Mr. Robertson began receiving Ciloxan[4] drops twice a day for both ears that day. DE 27-2 at 10.

---

[1] Tylenol is also called Acetaminophen. It "is used to relieve mild to moderate pain . . .." MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681004.html (last visited March 4, 2015).

[2] Debrox is also called Carbamide Peroxide . It is "[u]sed to soften, loosen, and remove excess [ear] wax . . .." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009441/ (last visited March 4, 2015).

[3] Vicodin is a combination of Hydrocodone and Acetaminophen "used to relieve moderate to moderately severe pain." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010590/ (last visited March 4, 2015).

[4] Ciloxan is also known as Ciprofloxacin. It "is a quinolone antibiotic." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009627/ (last visited March 4, 2015).

On April 12, Dr. Liaw had a follow up visit with Mr. Robertson to discuss the appointments with Dr. Sreeram. DE 27-2 at 12. Dr. Liaw noted that Dr. Sreeram had suggested Vicodin, but no changes were made to Mr. Robertson's medications during this visit. Id.

On April 27, after a follow up visit with Mr. Robertson and after speaking with Dr. Krembs at the prison, Dr. Sreeram decided that the Vicodin prescription wasn't necessary. DE 27-2 at 16-17. On May 1, Mr. Robertson met again with Dr. Sreeram. After that visit Mr. Robertson spoke to a nurse and asked for Vicodin. DE 27-2 at 19. The nurse told him that she couldn't prescribe medication and she forwarded his request to Dr. Krembs. DE 27-2 at 19-20.

On May 8, Mr. Robertson again requested Vicodin as well as a return visit to see Dr. Sreeram. Dr. Liaw prescribed another antibiotic prescription, but didn't schedule an appointment with the outside specialist because Dr. Sreeram declined to see him. DE 27-2 at 21. The same day, Mr. Robertson began receiving Maxidex[5] and Ciloxan drops twice a day. DE 27-2 at 23.

On June 1, Dr. Sreeram noted that Mr. Robertson's external ear was 90% cleared. DE 27-2 at 25. On June 6, Mr. Robertson asked a nurse to refer him to a doctor to get a prescription for Vicodin. The nurse declined to do so because there was no indication that Vicodin was needed. DE 27-2 at 27.

---

[5] Maxidex is also called Dexamethasone. It is a corticosteroid "used to treat ear infections." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009874/ (last visited March 4, 2015).

On June 20, Dr. Liaw saw Mr. Robertson as a follow up to his visit with Dr. Sreeram. DE 27-2 at 30. Dr. Liaw told Mr. Robertson that he would be scheduled to see an audiologist. DE 27-2 at 30. An audiologist saw Mr. Robertson the next day and recommended that he return to the otolaryngologist. DE 27-2 at 32. On June 26, Dr. Krembs saw Mr. Robertson and told him that he was scheduled to see an otolaryngologist and prescribed him Ultram.[6] Because there is no mention of back pain, the court accepts as an undisputed fact that this was prescribed for his ear pain. DE 27-2 at 34-35. On June 29, he was again seen by Dr. Sreeram who prescribed continuation of the antibiotic ear drops. DE 27-2 at 36 and DE 37-1 at ¶ 16. On August 7, Dr. Sreeram performed surgery on Mr. Robertson's ears. DE 27-2 at 38 and 40.

On August 22, Dr. Liaw saw Mr. Robertson for a chronic care visit related to his asthma and high blood pressure. DE 27-2 at 44. The report notes that Mr. Robertson had back pain, but makes no mention of it (or his ears) being discussed or treated; his ears weren't the subject of this visit. DE 27-2 at 44-45.

On August 31, Dr. Sreeram referred Mr. Robertson to the audiologist and suggested Vosol[7] ear drops, noting that it could be substituted. DE 27-2 at 47-49. As a substitution, Mr. Robertson continued, twice a day, to receive the antibiotic Ciloxan and the corticosteroid

---

[6] Ultram is also called Tramadol. It "is used to relieve moderate to moderately severe pain." MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last visited March 4, 2015.)

[7] Vosol is Acetic Acid. It is used "[f]or the treatment of superficial infections of the external auditory canal caused by organisms susceptible to the action of the antimicrobial." DailyMed, http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=39de0239-a4f6-45b0-a3cf-c6fba941c08e (last visited March 4, 2015).

Maxidex drops that he had been getting since at least May 8. DE 27-2 at 23, 44, and 50. On September 17, Mr. Robertson asked a nurse for medication for an old back injury, but she noted the he was "seen horseplaying and running, participating in rec[reation]." DE 27-2 at 50. On September 19, the audiologist saw Mr. Robertson and suggested that he continue his treatment with the otolaryngologist. DE 27-2 at 52.

On October 2, Mr. Robertson told Dr. Liaw that he fell off a ladder and hit his back on a brick. It's unclear whether this had happened recently or was the old injury he previously reported to the nurse. Dr. Liaw ordered an x-ray and a back brace if the x-ray indicated that it was necessary. DE 27-2 at 54. Later that day, Mr. Robertson was x-rayed and some abnormalities were noted. Mr. Robertson then stated that he was born with a defect related to his back. DE 27-2 at 56. A back brace was ordered on October 29. DE 27-2 at 74.

Dr. Sreeram performed surgery on both ears on October 19. DE 27-2 at 57-59. On November 1, Mr. Robertson was admitted to the infirmary at the prison where he was given Vicodin. DE 57-2 at 60-64. On November 2, Dr. Krembs replaced the Vicodin with Tramadol when Mr. Robertson was discharged from the infirmary. DE 27-2 at 65. On November 5, Dr. Sreeram found that Mr. Robertson was doing well. He recommended another follow up visit in a month. DE 27-2 at 71.

On November 6, Dr. Liaw saw Mr. Robertson for a chronic care visit to review his asthma, high blood pressure, and ear issues. Mr. Robertson reported that he was having back pain and asked for a bottom bunk pass. DE 27-2 at 74.

On December 20, Dr. Krembs saw Mr. Robertson, who was complaining of back pain. Dr. Krembs gave him an injection of Ketorolac[8]. DE 27-2 at 80. On December 24, Mr. Robertson missed a scheduled visit with a nurse. DE 27-2 at 82. On December 25, he was prescribed Ultram. DE 27-2 at 82. On December 30, a nurse noted that Mr. Robertson had filed 12 healthcare request forms in the past nine days requesting something other than Tylenol because it wasn't controlling his back pain. DE 27-2 at 82.

On December 30, Mr. Robertson told a nurse that his pain was a 10 on a 10 point scale and requested both oral and injected pain medication. The nurse contacted Dr. Liaw, who cancelled the Ultram prescription, but continued the Tylenol prescription. Mr. Robertson was given a heat pack for his back. DE 27-2 at 84-85.

2013

That brings us to 2013.

Dr. Sreeram performed surgery on Mr. Robertson's left ear on January 3. The doctor discharged him back to the prison the same day and prescribed Cipro[9] for 10 days and Vicodin for 24-48 hours. He prescribed Tylenol thereafter for pain. DE 27-2 at 87-89. Mr. Robertson received the Cipro and the Vicodin the same day and the Vicodin was continued for two days as prescribed. DE 27-2 at 90-91. On January 18, Dr. Sreeram saw Mr. Robertson for a follow up visit and recommended more Vicodin. DE 27-2 at 92. Later that

---

[8] Ketorolac is a NSAID "used to relieve moderately severe pain in adults . . .." MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a614011.html (last visited March 4, 2015).

[9] Cipro is also called Ciprofloxacin. It is an antibiotic "used to treat or prevent certain infections caused by bacteria." MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a688016.html (last accessed March 4, 2015).

8

day, Dr. Krembs prescribed Ultram three times a day for seven days. DE 27-3 at 93. On January 28, guards reported that Mr. Robertson was moving about freely and behaving normally. DE 27-2 at 94. Nevertheless, he was complaining about back pain. Id. Pursuant to prior approval, Mr. Robertson began receiving Vicodin twice a day for seven days. Id. The pills were crushed because Mr. Robertson previously had been caught holding an Ultram under his tongue rather than swallowing it. Id. On January 30, Mr. Robertson asked that his Vicodin prescription be extended for more than seven days. DE 27-2 at 96. He was told that the Vicodin prescription was only for seven days. Id. He was also told that a request for Ultram was sent to doctors "down state" on January 15, but wasn't approved. Id. Instead, it was recommended that he lose weight and exercise while using Tylenol for pain. Id. On February 4, Mr. Robertson complained that his back pain was a 10 on a 10 point scale and that he was being prevented from seeing anyone about it. DE 27-2 at 98. A nurse responded to him by letting him know that he had been seen by a doctor four times in five months for his back pain, with the most recent visit less than three weeks before. Id. Mr. Robertson also had seen nurses on numerous other occasions. Id. The issue was referred for further discussion during a scheduled visit with a nurse. Id. On February 7, Mr. Robertson asked if he had been approved for Tylenol 3.[10] DE 27-2 at 100. A nurse told him that Tylenol 3 hadn't been prescribed and that he should take three regular strength Tylenol that he could get from commissary. Id. On February 8, a guard told a nurse that

---

[10] Tylenol 3 is Acetaminophen and Codeine. It "is used to relieve mild to moderate pain." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601005.html (last visited March 4, 2015).

Mr. Robertson wanted to be brought to the infirmary and seen for back pain even though he hadn't suffered any new injury. DE 27-2 at 102. The nurse told the guard that Mr. Robertson had been seen a few days ago, that his health care request forms had been answered, that Mr. Robertson was unhappy with the medication that he had been prescribed, and that there was no reason to bring him to the infirmary. Id. On February 13, Dr. Sreeram saw Mr. Robertson for a follow up visit and prescribed Cortisporin[11] drops for his ears. DE 27-2 at 104. Mr. Robertson had already been getting Cortisporin drops since January 23. DE 27-2 at 106. Mr. Robertson demanded that Dr. Sreeram prescribe him pain medication, but the doctor refused and told him that the doctors at the prison would handle the pain management. DE 27-2 at 105. On February 14, Mr. Robertson asked to see a back specialist and was told by a nurse that the doctors at the prison are treating his back problems, but that perhaps when he finished his visits to the ear specialist he might be referred to a back specialist. DE 27-2 at 106. On February 21, in response to Mr. Robertson's complaints of ear and back pain, a nurse told him that he had been seen for both conditions the week before, and that he didn't need to be scheduled for another appointment so soon. DE 27-2 at 108.

On March 1, Dr. Liaw saw Mr. Robertson about his back pain. Mr. Robertson requested extra strength Tylenol. Dr. Liaw prescribed Vicodin twice a day for five days. DE 27-2 at 110. On March 7, Mr. Robertson asked a nurse to have his Vicodin prescription

---

[11] Cortisporin is a "combination of hydrocortisone, neomycin, and polymyxin [which] eliminates bacteria that cause ear, eye, and skin infections and relieves pain, inflammation, redness, and itching." MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601061.html (last visited March 4, 2015).

extended. The nurse sent Dr. Liaw an email asking about using an alternative medication. DE 27-2 at 115. On March 8, Mr. Robertson began taking Imipramine.[12] DE 27-2 at 117.

On March 10, in response to Mr. Robertson's complaints of back pain, a nurse told him that a sick call visit was unnecessary because he needed to take the Tofranil for three weeks to determine its effectiveness. Id. On March 23, a nurse responded to Mr. Robertson's continuing complaints of back pain by repeating that he needed to wait three weeks to see if the Tofranil was effective. DE 27-2 at 121. On March 25, Mr. Robertson was given an injection for his back pain. DE 27-2 at 125. On April 3, Mr. Robertson told a nurse that he wasn't going to follow the instructions to lose weight and perform back exercises. DE 27-2 at 127. Instead, he was going to file health care request forms until he was given narcotics. Id. The nurse sent Dr. Liaw an email with this information. Id. On April 12, in response to another complaint about back pain, a nurse noted:

> [Patient] instructed to continue present plan of care -
>     Imipramine as ordered
>     Wear back brace
>     Use cold or warm compresses [as needed]
>     No weights or heavy lifting
>     Utilize exercises on back sheet previously provided
> Sick call not indicated at this time. Discuss concerns at next [Chronic Care Visit] as previously instructed.
> [Patient] has been instructed on above multiple times.

DE 27-2 at 129. On April 12, Dr. Sreeram examined Mr. Robertson and suggested Vosol ear drops. DE 27-2 at 131-32. On April 16, Mr. Robertson began receiving the drops twice a

---

[12] Imipramine is also called Tofranil. MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682389.html (last visited March 4, 2015). It is an antidepressant "used to treat neuropathic pain." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0065329/ (last visited March 4, 2015).

11

day. DE 27-2 at 134. On June 16, a nurse told Mr. Robertson that he could take Tylenol for his back pain. DE 27-2 at 141. On June 25, Dr. Sreeram performed surgery on Mr. Robertson's ears and prescribed Tylenol 3 and Cipro. DE 27-2 at 143-44 and 152. On June 25, Mr. Robertson began receiving Cipro. DE 27-2 at 147. On June 26, he began receiving Tylenol 3. DE 27-2 at 149. On July 1, Dr. Sreeram noted that Mr. Robertson's ears had improved.

On July 5, Dr. Liaw saw Mr. Robertson as a follow up to his ear surgery and continued his prescription of Tylenol for pain. DE 27-2 at 152. On July 15, Mr. Robertson complained to a nurse about ear and back pain. DE 27-2 at 153. She referred him for a doctor visit. Id. On July 19, 2013, Dr. Liaw saw Mr. Robertson for his back pain. DE 27-2 at 155. Dr. Liaw ordered a new back brace. He also prescribed Vicodin and Ultram twice a day. DE 27-2 at 156.

On July 22, Dr. Sreeram examined Mr. Robertson for a follow up visit. DE 27-2 at 157. Mr. Robertson received his new back brace on August 1, DE 27-2 at 158, and began receiving Tylenol-Codeine #3 twice a day. DE 27-2 at 160. On August 12, a nurse observed Mr. Robertson before and during a nurse's visit. She noted that despite his statement that his back hurt very badly, he didn't show any signs of back pain. DE 27-2 at 162. On August 13, an audiologist determined that Mr. Robertson's hearing was normal. DE 27-2 at 164-66. On August 28, Mr. Robertson complained that he hadn't "received anything for my back pain." DE 27-2 at 173. A nurse responded that he was approved to receive Tylenol for his back pain. Id. On August 28, Dr. Sreeram examined Mr. Robertson and suggested that he

receive Clotrim[13] "or similar authorized drops." DE 27-2 at 175. On August 30, Mr. Robertson was started on Clotrimazole ear drops. DE 27-2 at 176. Dr. Sreeram examined Mr. Robertson on October 11, but didn't suggest that he receive any medication. DE 27-2 at 178. On October 16, Mr. Robertson told a nurse that "he does not use ear plugs because most recent ENT specialist [Dr. Sreeram], told him not to put any thing in his ear canals." DE 27-2 at 179.

On November 6, Dr. Liaw conducted a chronic care visit with Mr. Robertson. DE 27-2 at 185. Mr. Robertson complained of back issues but the doctor found that he could move without difficulty. Id. Dr. Liaw didn't renew the prescription for Tylenol, but it remained available for him to purchase from commissary. DE 27-2 at 186. Mr. Robertson also asked for ear plugs, but Dr. Liaw didn't authorize them because the otolaryngologist had said he shouldn't put anything in his ears and there was "no mention of ear plugs in consultant's report." DE 27-2 at 185. On November 26, Dr. Liaw saw Mr. Robertson for a scheduled visit and they discussed his chronic back pain. DE 27-2 at 190. Dr. Liaw referred him for physical therapy. DE 27-2 at 193.

On December 9, Mr. Robertson complained about back pain and a nurse told him that he had been referred for physical therapy. DE 27-2 at 193. On December 10, Mr. Robertson walked to medical without assistance after complaining of back pain. After being seen by a nurse, he "got up out of his chair and walked back into the hallway with

---

[13] Clotrim is also called Clotrimazole. It is an antifungal "used to treat fungus infections . . .." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009693/ (last visited March 4, 2015).

13

no [signs or symptoms] of back injury or pain." DE 27-2 at 195. On December 11, after complaining of back pain, a nurse told him that he had been seen six times since September for back problems and has mentioned them every time he requested a breathing treatment.[14] DE 27-2 at 197. She noted that he "has no difficulty performing [activities of daily living] and is able to move about with no change in gait, able to donn doff coat with no [signs or symptoms of] distress, rises stands, twists turns, with not as much as a grimace." Id. The nurse told him that he could get pain medication from commissary. Id. On December 13, Mr. Robertson saw a nurse about his back pain and she noted that he continued to wear a back brace and had access to pain medication from commissary. DE 27-2 at 199.

On December 18, Mr. Robertson told Dr. Liaw that he was supposed to have had another follow up visit with Dr. Sreeram for his ears. DE 27-2 at 203. Dr. Liaw reviewed the consultant notes, but there was no mention of a follow up visit. Id. Nevertheless, Dr. Liaw contacted Dr. Sreeram's office to verify. Id. This was the last record of Dr. Liaw having seen or treated Mr. Robertson. In a letter postmarked March 5, 2014, Mr. Robertson notified the court that he had been transferred to the Miami Correctional Facility. DE 12.

These medications cause Mr. Robertson to have gastrointestinal problems: Chlorpheniramine, Aspirin, Magnesium, Calcium Carbonate, Ibuprofen, Pseudoephedrine HCl, and Naproxen. DE 27-2 at 227-28.

---

[14] Mr. Robertson has asthma and received nebulizer breathing treatments. Because his asthma is not at issue in this case, it is only mentioned in this opinion when it is related to his ear and back treatment or when Dr. Liaw provided him treatment for it.

### III. Analysis

Mr. Robertson alleges that Dr. Jackson was deliberately indifferent to his serious medical needs. The records contains no evidence that Dr. Jackson ever treated or refused to treat Mr. Robertson. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Since there is no evidence that Dr. Jackson ever had occasion to treat Mr. Robertson, summary judgment will be granted as to the claims against Dr. Jackson.

Mr. Robertson argues that the Dr. Liaw was deliberately indifferent because he didn't provide him with ear plugs.

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also* McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1993) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."). A "disagreement with medical professionals [does not] state a cognizable Eighth Amendment Claim under the deliberate indifference standard of

15

Estelle v. Gamble [429 U.S. 97 (1976)]." Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

This record contains no evidence that Mr. Robertson needed ear plugs. There is no record that Dr. Sreeram, the otolaryngologist who treated him for more than a year and a half and performed surgery on his ears four times, ever recommended that he have ear plugs. Indeed, Mr. Robertson told a nurse that he didn't use ear plugs because Dr. Sreeram told him not to put any thing in his ear canals. When Mr. Robertson asked for ear plugs, Dr. Liaw denied the request because he was advised not to put anything in his ears and Dr. Sreeram had never suggested that he needed ear plugs. It wasn't deliberately indifferent for Dr. Liaw to have refused to provide Mr. Robertson with ear plugs.

Mr. Robertson argues that the Dr. Liaw was deliberately indifferent because he refused to provide him adequate pain relief for his ears and back. Dr. Liaw treated Mr. Robertson fifteen times in 22 months. During that time, Mr. Robertson saw at least three other doctors 26 times. Those doctors prescribed him Ultram, Vicodin, Tylenol, Tylenol 3, and Ketorolac injections. Despite repeated evidence that Mr. Robertson wasn't in nearly as much pain as he claimed and despite having been caught concealing pain medication rather than swallowing it, Dr. Liaw prescribed Tylenol, Vicodin, Imipramine, and Ultram. He ordered an x-ray of Mr. Robertson's back and provided a back brace, a heat pack, and replacement back brace. He recommended that Mr. Robertson perform back exercises and lose weight. He also referred him for physical therapy. "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial

interference, except in the most extreme situations." Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

Mr. Robertson argues that despite numerous treatments, he remained in pain. "If [a doctor] exercises sound judgment in selecting from a variety of approved treatments and uses ordinary care and skill in treating a patient, then the [doctor] is not responsible for the treatment's lack of success." Griffin v. Foley, 542 F.3d 209, 216 (7th Cir. 2008). This record contains no evidence from which a reasonable factfinder could conclude that Dr. Liaw was deliberately indifferent to Mr. Robertson's pain.

Mr. Robertson argues that Dr. Liaw was deliberately indifferent because he delayed ordering ear drops for two to three weeks. Nothing in the summary judgment record supports that assertions. On the five occasions that Dr. Sreeram prescribed ear drops, Mr. Robertson twice began receiving them the same day and twice had already been receiving them. One time there was a four-day delay. It is unclear why there was a delay, but there is no indication that Dr. Liaw was involved.

> [C]onclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment. We repeatedly have held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter; rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.

Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001) (quotation marks, citations, parentheses, and brackets omitted). *See also* Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009) ("[T]he nonmoving party must point to specific facts showing

that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice.") Mr. Robertson hasn't provided the court with any specific facts demonstrating that Dr. Liaw was deliberately indifferent to his medical treatment by delaying his access to ear drops.

Mr. Robertson argues that Dr. Liaw was deliberately indifferent because he prescribed medication to which he was allergic. The undisputed evidence shows that Mr. Robertson has gastrointestinal problems if he takes Chlorpheniramine, Aspirin, Magnesium, Calcium Carbonate, Ibuprofen, Pseudoephedrine HCl, or Naproxen. Dr. Liaw prescribed Tylenol, Vicodin, Imipramine, and Ultram. There is no evidence that Dr. Liaw ever prescribed Mr. Robertson any medication to which he is allergic.

Finally, Mr. Robertson argues that Dr. Liaw was deliberately indifferent because he wouldn't refer him to physical therapy or send him to a specialist. The undisputed evidence shows that Dr. Liaw did refer him for physical therapy. It's unclear whether Mr. Robertson saw a physical therapist before he was transferred to the Miami Correctional Facility, he hasn't provided any evidence that Dr. Liaw delayed the scheduling of his physical therapy appointments. As for not referring him to a back specialist, prisoners are "not entitled to demand specific care [nor] entitled to the best care possible" Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997). Based on the extensive number of treatments provided to alleviate Mr. Robertson's back pain — see pages 4-14 of this opinion — no reasonable factfinder could conclude that Dr. Liaw was deliberately indifferent for not referring Mr. Robertson to a back specialist. Moreover, there is no evidence that Dr. Liaw's

18

decision whether to send Mr. Robertson to an outside back pain specialist was based on anything other than his professional judgment.

### IV. Conclusion

For the foregoing reasons, the plaintiff's motion (DE 30) asking to dismiss the summary judgment motion is DENIED. The defendants' motion for summary judgment (DE 26) is GRANTED. The clerk is DIRECTED to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: March  17 , 2015

/s/ Robert L. Miller, Jr.
Judge,
United States District Court